# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEAN MATTHEW CARTER, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL[1], <br><br> Defendant. | CIVIL ACTION NO. 3:18-CV-02321 <br><br> (MEHALCHICK, M.J.) |

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Dean Matthew Carter's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **VACATED** and **REMANDED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On March 11, 2015, Plaintiff Dean Matthew Carter ("Carter") protectively filed an application for Title II benefits claiming a disability which rendered him unable to work beginning on September 16, 2014. (Doc. 8-5, at 8). Carter's claims were initially denied by the Social Security Administration on July 8, 2015. (Doc. 8-4, at 6-10). Thereafter, Carter

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, the current Commissioner of Social Security, replaces former Commissioner Nancy A. Berryhill as the Defendant to this action.

filed a request for a hearing before an Administrative Law Judge ("ALJ") on July 28, 2015. (Doc. 8-4, at 11-12).

Carter, who was represented by counsel, appeared and testified at an administrative hearing before ALJ Howard Kauffman on March 13, 2017. (Doc. 8-2, at 32-72). In a written opinion dated August 7, 2017, the ALJ determined that Carter was not disabled and therefore not entitled to the benefits sought. (Doc. 8-2, at 17-26). Carter appealed the decision of the ALJ to the Appeals Council, who, on October 2, 2018, denied Carter's request for review. (Doc. 8-2, at 1-6). On December 5, 2018, Carter filed the instant action, seeking judicial review of the ALJ's decision. (Doc. 1). The Commissioner responded on April 16, 2019, providing the requisite transcripts from the disability proceedings. (Doc. 8). The parties then filed their respective briefs, with Carter alleging two errors that warranted reversal or remand. (Doc. 11); (Doc. 13); (Doc. 14).

## II. THE ALJ'S DECISION

In his October 2, 2018 decision, the ALJ determined Carter "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2014, the last date insured." (Doc. 8-2, at 26). The ALJ reached this conclusion after denying Carter's claim at step five of the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ also determined that Carter met the insured status requirements of the Social Security Act from Carter's alleged onset date, September 16, 2014 to the date last insured, December 31, 2014. (Doc. 8-2, at 18).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20

C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined Carter did not "engage in work at the level of [SGA] during the period between the alleged onset date and his date last insured." (Doc. 8-2, at 20). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that Carter had the following severe impairments: lumbar degenerative disc disease, left hip degenerative joint disease, bilateral tarsal tunnel syndrome, obesity, and cervical stenosis. (Doc. 8-2, at 20).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). The ALJ determined that none of Carter's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 8-2, at 20-21).

Specifically, the ALJ considered Listings: 1.02 (major dysfunction of a joint(s)) and 1.04 (disorders of the spine). (Doc. 8-2, at 21).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Here, the ALJ determined that Carter had the RFC to perform light work with the following limitations: "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; could sit, stand or walk for a total of up to six hours each in an eight-hour workday; could not perform pushing or pulling with the bilateral lower extremities; and could not use ladders, ropes or scaffolds." (Doc. 8-2, at 21).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. The ALJ determined Carter was unable to perform past relevant work through the date last insured. (Doc. 5-2, at 23). The ALJ noted past relevant work as a roofing supervisor, team crew leader, and foot press operator, and the exertional requirements of each exceeded Carter's RFC. (Doc. 8-2, at 24).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work.

20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). The ALJ made vocational determinations that Carter was fifty years old on his date last insured, but erroneously classified that as "a younger individual age 18-49" as defined by the Regulations. (Doc. 8-2, at 24); 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963. The ALJ then noted that Carter "subsequently changed age category to closely approaching advanced age." (Doc. 8-2, at 24). In fact, Carter was forty-nine years old on the alleged onset date (September 16, 2014), turned fifty-years-old on October 5, 2014, and so was 'closely approaching advanced age' as of the date last insured, December 31, 2014. (Doc. 8-2, at 24); 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963. It is unknown what effect this apparent error had on the ALJ's final decision, therefore the Court will consider it in performing its review. The ALJ also noted that Carter "has at least a high school education and is able to communicate in English" as considered in 20 C.F.R. § 404.1564; 20 C.F.R. § 416.964. (Doc. 8-2, at 24). The ALJ determined that upon consideration of these factors, Carter's RFC, and the testimony of a vocational expert, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Doc. 8-2, at 24). The ALJ specifically identified occupations of cleaner/housekeeper; bakery worker, conveyor line; and machine tender, laminating. (Doc. 8-2, at 25).

As a result of this analysis, the ALJ determined that Carter was not disabled and denied his applications for benefits. (Doc. 8-2, at 26).

**III. STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. §

416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Carter is disabled, but whether the Commissioner's finding that Carter is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV. DISCUSSION

On appeal, Carter argues that the ALJ erred by failing to: (1) afford Carter's treating physician, Dr. Werner, controlling weight with regard to his opinion; and (2) explain which medical opinion he relied on in determining Carter's RFC. (Doc. 11, at 6).

### A. THE ALJ DID NOT SUFFICIENTLY CONSIDER DR. WERNER'S OPINION

In his first contention of error, Carter argues that the ALJ's RFC assessment cannot be supported by substantial evidence because the ALJ erred in failing to assign controlling weight, as Carter's treating source, to Dr. Werner's opinion. (Doc. 11, at 7). Carter identifies Werner's opinion that he would be limited to "sedentary duty" as of December 9, 2014, and argues that the ALJ erred in not giving this statement controlling weight. (Doc. 11, at 7); (Doc. 8-10, at 36). Citing SSR 96-5p, Carter argues that the ALJ must adopt any medical opinion which is entitled to controlling weight and that controlling weight must be assigned to the well-supported medical opinion of a treating source unless the ALJ identifies substantial

- 8 -

inconsistent evidence. (Doc. 11, at 8) (citing 20 C.F.R. § 404.1527(c)(2)). Therefore, since Dr. Werner is admittedly a treating source, (Doc. 8-3, at 4), the ALJ must assign controlling weight to his opinion that Carter should be limited to sedentary duty as of December 9, 2014, as long as it is well supported and not inconsistent with other substantial evidence. (Doc. 11, at 9).

The ultimate determination of a claimant's RFC is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1)-(3); *Ray v. Colvin,* 2014 WL 1371585, at *18 (M.D. Pa. 2014) ("[Treating physician's] opinion as to the ultimate issue, *i.e.*, [p]laintiff's ability to work, is not controlling because such conclusions are expressly reserved for the Commissioner."). One could argue that an opinion limiting a claimant to 'sedentary duty' does not speak to as 'ultimate' an issue as an opinion declaring a claimant 'disabled.' This Court has held, however, that a treating physician's opinion on a claimant's work capability falls under the 'ultimate issue' umbrella, thus is reserved for the Commissioner. *See Brown v. Astrue*, 649 F.3d 193, 196 n. 2 (3d Cir. 2011) ("The law is clear, however, that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."); *Webber v. Colvin*, 2014 WL 29010, at *11 (M.D. Pa. 2014) (explaining that treating physician's opinion that claimant had functional limitations inconsistent with full time work was not entitled to controlling weight as it was an ultimate issue reserved for the Commissioner).

Though the Commissioner holds determinative power on the claimant's ability to work, he still must give substantial weight to the treating physician's medical opinions on that issue. *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (explaining that the treating physician's opinion that claimant was "seriously limited" in ability to perform work-related tasks was entitled to great weight and could only be rejected on the basis of contradictory

medical evidence); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) ("Dr. Corcino's opinion that Cotter could not return to work is entitled to substantial weight because he is Cotter's treating physician."). If the ALJ rejects the treating physician's opinion, he must do so with "a discussion of the evidence and an explanation of reasoning" sufficient to enable meaningful judicial review. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quotation omitted).

Despite the fact that Dr. Werner is a treating physician, his opinion that Carter should be limited to sedentary duty is not entitled to controlling weight because the ultimate determination of a claimant's RFC lies with the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1)-(3); *Ray*, 2014 WL 1371585, at *18. Still, this opinion must be accorded substantial weight and may only be rejected if contrary medical evidence exists. *See Morales*, 225 F.3d at 317-18. Here, the ALJ gave this opinion limited weight. (Doc. 8-2, at 23). His reason for doing so was that the opinion "fail[s] to clearly articulate the specific functional activities of which the claimant remained capable; the objective clinical signs and findings accompanying these notes have been considered in reaching the findings discussed herein." (Doc. 8-2, at 23).

This reasoning is problematic because it is the ALJ's responsibility to develop the record. *Richards v. Colvin*, 223 F. Supp. 3d 296, 307 (M.D. Pa. 2016). If the treating physician did not clearly articulate the specific functional activities which Carter was capable of performing, the ALJ was responsible for taking the steps to produce that articulation. "Reinterpreting medical evidence to reject a treating source opinion without attempting to recontact the treating source [] violates the ALJ's duty to develop the record." *Burns v. Colvin*, 156 F. Supp. 3d 579, 593 (M.D. Pa. 2016). Any inconsistency must be resolved by gathering

additional medical evidence. *Burns*, 154 F. Supp. 3d at 592. By going no farther than to say that Dr. Werner's "objective clinical signs and findings" were considered in making his determination, the ALJ failed to enable meaningful judicial review. *See Diaz,* 577 F.3d at 504. In rejecting Dr. Werner's opinion, the ALJ should have discussed the evidence and explained the reasoning. *See Diaz,* 577 F.3d at 504. If evidence was insufficient, the ALJ was responsible for remedying that. *See Richards*, 223 F. Supp. 3d at 307. Here, the ALJ did not give substantial weight to Dr. Werner, the treating physician, nor did he discuss the evidence and how the evidence affected his reasoning. *See Diaz,* 577 F.3d at 504.

Therefore, the Court is precluded from finding the ALJ's decision was supported by substantial evidence, and it will be ordered that the Commissioner's decision be vacated and remanded.

B. THE ALJ DID NOT SUFFICIENTLY ARTICULATE THE REASONING OF HIS DECISION

The Plaintiff is correct in stating that the ALJ is required to give significant or great weight to at least one medical opinion. *Reznick v. Colvin*, 2016 WL 5936893, at *3 (M.D. Pa. 2016). To fail to do so means the ALJ is "set[ting] his own expertise against that of a physician who presents competent evidence by independently reviewing and interpreting the medical evidence," which is not permitted. *Reznick,* 2016 WL 5936892, at *3. This error, alone, is grounds for remand for further proceeding. *Dedek v. Berryhill*, 2018 WL 835740, at *8 (M.D. Pa. 2018).

Equally troublesome is the ALJ's practice of forming conclusions without addressing substantial countervailing evidence. *See Cotter*, 642 F.2d at 705 (3d Cir. 1981) (explaining that some indication of the evidence which was rejected is required so as to tell if significant probative evidence was not credited or simply ignored); *Dobrowolsky v. Califano*, 606 F.2d 403,

407 (3d Cir. 1979) (explaining that in order to say a decision is rationally based on substantial evidence, the ALJ must "sufficiently explain the weight he has given to obviously probative exhibits.").

The Third Circuit has held that a claimant's testimony is entitled to great weight and should not be disregarded absent contrary medical evidence. *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 66 (3d Cir. 1987). In this case, the ALJ's description of Carter's testimony is as follows:

> At the hearing, the claimant testified that he had left his job as a roofer because he was no longer able to stand or walk for extended periods, and had difficulty operating a foot press machine. The claimant additionally testified that he was currently experiencing back pain (and using a back brace), and that he had been using a cane for ambulation (due to back and hip pain) for two years. With specific regard to the period prior to December 2014, the claimant testified that he had been unable to stand more than 20 minutes at a time, or walk more than one city block.
>
> (Doc. 8-2, at 22).

Highly relevant, due to it being the period during which he was insured, is that Carter testified to being unable to stand more than 20 minutes at a time or walk more than one city block prior to December 2014. This testimony is entitled to great weight and can only be disregarded if the ALJ can point to contrary medical evidence. *Carter*, 834 F.2d at 66.

The only point at which the ALJ addresses medical evidence from the time period when Carter was insured[2] is when he opines,

---

[2] The ALJ also refers to numerous opinions from after the last insured date, but these are not from a treating physician and do not provide retrospective diagnoses, therefore are deserving of limited weight. *Tecza v. Astrue,* 2009 WL 1651536, at *10 (W.D. Pa. 2009) (explaining that medical opinions which are temporally remote and which do not address the level of functioning during the relevant time period are to be given less weight); *Jones v. Barnhart*, 2005 WL 2033383, at *6 (E.D. Pa. 2005) (explaining that an evaluation cannot be

> The period under consideration begins with the claimant's alleged onset date, September 16, 2014. Records relating to the period following this date do not reflect a disabling degree of functional restriction as of his date last insured, December 31, 2014.
>
> Nerve conduction performed in June 2014, following the claimant's reports of numbness in his left foot, yielded findings indicative of left posterior tarsal tunnel syndrome involving the medial plantar branch. Physical therapy evaluation notes from August 2014 reflect the claimant's reports that his foot discomfort was effectively mitigated with shoe inserts.
>
> On September 9, 2014, the claimant reported experiencing continued tenderness and decreased sensation in his left foot, and clinical examination noted a positive Tinel's sign. The claimant underwent a left tarsal tunnel release procedure on September 18, 2014. On October 7, 2014, the claimant had no specific complaints and was ambulating using a cane. The claimant was given a walking boot at that time and was instructed to weight-bear as tolerated. On November 4, 2014, the claimant was recommended to return to light duty work and the claimant's physician indicated that he should be weaned from use of the boot. As of December 9, 2014, the claimant reported alternating between the boot and regular shoes with over-the-counter orthotics.
>
> ([Doc. 8-2, at 22](Doc. 8-2, at 22)).[3]

In examining three months' worth of medical notes (from October to December, the period between the alleged onset date and the last date insured) from Dr. Werner, Carter's treating physician, the ALJ observed that Carter had no specific complaints, was ambulating with a cane, and was given a walking boot and instructed to weight-bear as tolerated in October; was to be weaned from use of the boot and recommended to return to light duty work in November; and reported alternating between the boot and shoes with orthotics in December. The ALJ subsequently concluded, "the relevant evidence shows the claimant retained

---

deemed probative evidence when it reflects only current status and does not relate back to the period for which the plaintiff is insured).

[3] As the alleged onset date was September 16, 2014, the relevance of the finding that Carter's discomfort was mitigated with shoe inserts in August, 2014, is relatively low.

adequate ambulation ability (without an extended need for any assistive device), experienced effective symptomatic relief from surgery and the use of orthotics, and demonstrated unimpaired strength and maneuvering ability." (Doc. 8-2, at 23).

The ALJ, in interpreting Dr. Werner's opinion, did not address the length of time Carter could stand, nor the distance he could walk. (Doc. 8-2, at 23). The closest he came was his conclusion that the relevant evidence showed Carter "retained adequate ambulation ability," and "demonstrated unimpaired strength and maneuvering ability." (Doc. 8-2, at 23). In not discussing how the evidence directly contradicted Carter's testimony that he could stand not more than 20 minutes at a time or walk more than one city block, the ALJ should have given Carter's testimony great weight. *Carter*, 834 F.2d at 66.

Unfortunately, the picture which the ALJ painted told only half the story. Dr. Werner's last note before Carter's last insured date stated that Carter "still [has] pain, some tingling," and flatfoot deformity. (Doc. 8-11, at 6). This note also stated that Carter still had "some swelling and tenderness medial hindfoot tarsal tunnel region," and that his "range of motion is improving." (Doc. 8-11, at 6). This evidence – that he was experiencing pain, his range of motion was *improving,* and that he was experiencing swelling and tenderness – directly contradicts the ALJ's conclusion that Carter demonstrated unimpaired strength and maneuvering ability and that he experienced effective symptomatic relief from surgery. (Doc. 8-2, at 23); (Doc. 8-11, at 6). The ALJ did not mention the pain, the swelling and tenderness, the full to intermittent use of a boot from the surgery date through the date last insured, nor the lack of full range of motion. (Doc. 8-2). Nor did the ALJ mention that Carter's pain worsened as time went on. (Doc. 8-11, at 4-9). Without mention of this probative evidence, it

is impossible to know whether the ALJ considered and discounted it or ignored it. *See Cotter, 642 F.2d at 705*. Remand is necessary to clarify that issue.

Further, the ALJ stated, "On November 4, 2014, the claimant was recommended to return to light duty work," (Doc. 8-2, at 22), when in fact the November 4, 2014, note from Dr. Werner said, "He is currently recommended to go back light duty in the beginning of December…" Stating that the claimant was currently recommended to return to work *one month away* is significantly different than a recommendation to return immediately. Doctors often plan for improvements in condition over the course of a month, and those plans can often go awry. The recommendation to return to work one month away is inherently more tentative, thus less probative, than a recommendation to return immediately. Without knowing how much weight the ALJ gave to this possibly erroneous reading of Dr. Werner's note, it would be unfair to uphold the denial of disability without remand for clarification.

Finally, as mentioned *supra*, it is not clear what effect the ALJ gave to Carter's age, and the fact that he turned 50-years-old approximately one month after the alleged onset date and less than three months prior to the last insured date. *See* 20 C.F.R. § 404.1563 (b)(d). When "the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether [claimant is] entitled to consideration … as a borderline age case," the matter should be remanded for lack of substantial evidence. *Lucas v. Barnhart*, 184 Fed. App'x 204, 208 (3d Cir. 2006).

V.  **REMEDY**

The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only

be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales,* 225 F.3d at 320; *see generally* Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ( "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the Court concludes that the ALJ's articulated reasoning with respect to Carter's functionality prior to the date last insured does not allow for meaningful judicial review, further development of the record is warranted, and the decision of the Commissioner is VACATED and the case REMANDED.

## VI. CONCLUSION

Based on the foregoing, the Commissioner's decision will be **VACATED,** and the case **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order will follow.

**Dated: December 9, 2019**　　　　　　　　　　　　　　　*s/ Karoline Mehalchick*
　　　　　　　　　　　　　　　　　　　　　　　　　　　**KAROLINE MEHALCHICK**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**